Good morning, Your Honors. I'm Mark Berger, arguing on behalf of the Riverside Sheriff's Association. I will reserve most of my time for rebuttal or questions. Counsel, I have a question for you. Yes, sir. This body of law, name-clearing hearings, is about stigmatizing discharges. Right. And as far as I can see, there's no stigmatizing discharge. The discharge doesn't say why Bradstreet was discharged. And, in fact, the one municipality that inquired about him, called up to find out about him, heard whatever the county said and got whatever was in the file and hired him as a cop. So I must be missing some part of your theory of the case. It looks like an element of it just isn't there. Your Honor, this case is about exactly what it's – what – under what circumstances an employer – an employee, a probationary employee, is entitled to a liberty interest hearing. Well, wait. Show me the stigmatizing discharge. Where is it in the excerpts? In – well, it – we contend that the publication – the filing of criminal charges roughly contemporaneously with the discharge is – and the creation thereby of a criminal record. Okay. In a criminal case, that's something different. Let me make my question clearer with a hypothetical. Suppose that the boss fired the guy and said, I'm firing you because you're a crook and you're a child molester and you beat people up and you're an awful person in every conceivable way, and that's why I'm firing you. And the guy says, I want a hearing. None of these things are true. This is really unfair. And it is. We'll assume for the hypo everything here is false. It's just all malice. And he's denied a hearing. And then in his personnel file, under reason for discharge, the employer writes, reduction in funds available, probationary employee, last hired, first fired. He was a wonderful employee, a fine person, excellent in every way. When subsequent employers inquire, that's what they find out. The guy was just first rate, wonderful. They don't find out any of this bad stuff that was alleged and was false and that a hearing was denied about. It seems to me that you would have no claim then for violation of the liberty interest by denial of a name-clearing hearing because there would be no stigmatizing discharge. Am I right on that? I would agree with that with one minor reservation under that particular hypothetical. And that is a very apt hypothetical to get into this case, because that is exactly what the Riverside Sheriff's Department did in this case and does in similar cases, is that it will not, when it terminates, the probationary employee does not put a statement of reasons in the official notice of discharge, and that is the sole basis on which they argue that they're not required to grant a liberty interest hearing. Now, under the hypothetical that Your Honor just gave me, I would agree. I'm trying to find out whether I need to look at anything but the criminal case in order to decide whether the county did anything wrong. In this case, we do not. Actionable, I should say. In this case, the criminal charge is the sum total of all the stigmatization that the county did. It's a very simple case. So the answer in Judge Kleinfeld's hypothetical is that there's no problem. I did have one minor reservation, and that was that under those facts where, for example, if all they had put in the personnel file was what they do here, unsatisfactory performance, in that case, absolutely no right to a liberty interest hearing. I totally agree. However, if the personnel file did say, first-rate employee, I recommend him highly, terrific performance, if the employee were to say, this doesn't sound right, sounds like a reason to keep me, not fire me, in that case, perhaps if the employee was prepared to say, this is a veiled, subtle way of conveying stigmatizing information, perhaps there would be a reason for arguing for a liberty interest hearing. But I think that would fail also for the further reason that, as stated in the Hopson case, which we've cited, the focus in determining the right to a liberty interest hearing is the impact on the employee of having the stigmatizing charges out there in the public where prospective employers can find them. Obviously, if it was purely a private statement from the employer to the employee that's not put in writing, not made available to prospective employers, and that's the key point, made available to prospective employers, there would be no right to a liberty interest hearing. Kagan. Let me ask you. This case is about whether ---- Could you just stop when somebody tries to ask you a question, please? Right. Yes. This is the third time I've tried to stop. And this time you did reach an end.  I'm sorry. First of all, on page, I think it's 82 of the excerpts, but it's under tab 3, there's a document that's headed Riverside County Sheriff's Department, narrative of initial report, and it seems to be an internal report that does talk about what Bradstreet did. Is that in his personnel file? What is that document? It's my understanding that that would, if it's an internal investigation, it's not in the personnel file, and it's not something that would ---- it's not something that would be made available to prospective employers, and therefore it would not be a basis for asking for a liberty interest hearing. I see. My second question is, taking a variant of Judge Kleinfeld's hypothetical, if the document ---- if there were something in the personnel file that said discharge because he used excessive force and you would have a right to a liberty interest and let's say you had a liberty interest hearing and you had a liberty interest hearing, what happens if you win? Do you get your job back? Under the case law, you are entitled to ask for your job back to convince ---- attempt to convince the decisionmaker to change the decision. There is no obligation on the part of the decisionmaker to change the decision, and the primary purpose is to make a record of your denial and any evidence that you wish to support the denial, which would then accompany the employee through the search for future employment and thereby protect the interest in the search for future employment. But the case law talks about a right to ask for your job back, but it doesn't impose a concomitant duty on the employee. But didn't the record here show that he was invited to apply for his job back and told that he might well get one someday and so on? In a sense, that invitation perhaps arguably does meet some of the expectations of the purpose of a liberty interest hearing, but it does nothing to protect his interests in seeking future employment with other employers in the field. And what will follow him around under those circumstances is the fact that a future employer who conducts a diligent search of public records will find this criminal conviction, will note the contemporary---- Roberts. There is a criminal conviction. Sorry.   I misspoke. The criminal charge and will---- Now, on that criminal charge, I don't get that. This body of law on name-clearing hearings all has to do with the reason for discharge. I am unaware of any case that says that a person is entitled to some sort of hearing, some sort of due process, notice and an opportunity to be heard, before they are charged in a criminal case. And frankly, I cannot imagine any such principle, because most criminal charges, many have to be made before there's notice in a hearing in order to apprehend the person. The notice in a hearing comes after in a criminal charge. Once you get charged, then you can defend yourself. In this case, I don't think it even got charged. I think it washed out at the grand jury, didn't it? At the preliminary hearing. Preliminary hearing? We do not argue that there is a right to a hearing before being charged criminally. We do argue that there is a right to a liberty interest hearing when the discharge is roughly contemporaneous with criminal charges which can be inferred as the reason for termination. Criminal charges are not in his personnel file as the reason for termination, and they're not told to subsequent employers. I suppose they can find it by searching court records or databases, but then they, all they find out is that it was dismissed at the preliminary hearing. The fact of the matter is, White County hired the guy as a cop. And your opportunity, I just don't get it. He had his opportunity to be heard. He had his notice. He got notice that there was a complaint filed against him, and he had an opportunity to be heard at the preliminary hearing, and he succeeded. Your Honor, I agree that in this case, that what happened after the termination and the employee did get rehired, and we have no way of knowing whether or not that was with or without the awareness of the criminal charge. The harm in this case is, in this specific case, is not so dramatic, but the issue of law is quite crystal clear, which, if there is no right to a liberty interest hearing under these facts, then it basically, yes. Suppose they had kept, not fired him, but made the referral to the DA. Would he be in the same situation? No. It must be accompanied. It must be roughly contemporaneous with it. But that's in terms of, as a practical matter. And then he quit six months later. Why would he be in any different situation at all? I mean, frankly, I find this whole area of law completely baffling, especially after Siegert, because the other problem with everything you're saying is that if they had fired him, not referred him for criminal charges, not put anything in his personnel files, and three weeks later written a letter saying that he had used excessive force and deed to a criminal level, he would have no cause of action. Well, Siegert is a different body of law. Siegert is a body of law having to do with the connectedness between the stigmatizing allegation and the termination. In that case, the causal relationship is broken by the employer's resignation in Siegert and in Vodafone as well. And, of course, in Siegert, the facts are only that the employer was asked for a reference. And that is a completely different matter. That's purely under defamation law. And yes. Ginsburg. What I understand that you're relying on here as this stigmatizing event is a timing issue. And that is that the department went to the DA almost simultaneously. I think it was a few days, within days of the incident. And so you're suggesting, as I understand your argument, you're suggesting that the fact that this was made public in close proximity and time to the termination, that it became a stigmatizing event. Well, the key point is that it's available to prospective employers. And it's also the timing is important because it is a case in which the employer is trying to withhold any official notification of the reasons for discharge. So that if a prospective employer, reading the personnel file and the background file, reads entirely neutral information, discharge during probation, unsatisfactory performance, end of story, and then checks the public record and finds, oh, there was a criminal charge that he used excessive force. Is it just the public record or is it the newspaper? It is public record. It's a county stipulate. I don't get what's the matter. I mean, they thought that this particular guard had beaten up a shackled prisoner who had a smart mouth on him. And so they charge him criminally, an entirely proper and appropriate thing to do. It's a crime to beat up a prisoner because he has a shackled prisoner because he has a smart mouth. The guy gets due process in the criminal proceeding. And in fact, he prevails. He gets it dismissed at the earliest possible stage, the preliminary hearing. They also didn't want him working there anymore. He's a probationary employee. So he's at will and they can fire him for any reason or no reason, whether it's proved beyond a reasonable doubt that he beat up a prisoner or not. So they fire him. But they don't put anything stigmatizing in his personnel record. And they don't give out a stigmatizing reference. So he doesn't need to clear his name on the employment decision. And he has cleared his name on the criminal case. I just don't see what his problem is. Well, the problem is that if a prospective employer finds this criminal record and would then know that. What's the matter with that? It's all true history. There was a charge and it was dismissed for lack of probable cause. Prospective employer is in a position to infer that he was. Are you saying that they shouldn't have charged him for beating up the prisoner? Are you saying that they shouldn't have, after the termination, allowed him to come in and present to the sheriff, not to the district attorney or the prosecutor, but to present to his employer his defense to the charge that he violated any work rules or procedures? They already offered him that. They said, what do you have to say? And he said, I'm not saying anything. At that point, he was still facing the criminal charge and would only be able to speak at the risk of his Fifth Amendment rights. So it. So? It. There's a lot of stuff where you have a personal injury case going and there's also a criminal case and you pretty much have to elect whether to sacrifice your interest in your PI case or sacrifice your interest in your criminal defense. Well, Your Honor, this is a good point. To go back to this case, though, I mean, I think Judge Kleinfeld makes a good point about he was given the opportunity to say something. And that, as I understand that, that was before. That was immediately after the incident. That was before the charge was filed. And he said, I don't want to say anything. But after the decision was made to fire him. After. The record is quite clear that that was after the decision was made to fire him. There was nothing he was going to say at that hearing that was going to influence the firing. But since you're talking about a name-clearing issue, why isn't that sufficient? It doesn't make any difference because he doesn't get his job back in any event. But the question I want to get to, though, is I think this area of the law is both baffling and interesting, is really it's the sheriff's department, in a way, or any kind of public employer in this situation, is caught between a rock and a hard place. Because if they put something in the file, then that is the public record. And that can be used as requiring a preliminary hearing. So they try to do the same thing and not put anything in the file, which doesn't that put your client and the sheriff's association members in the best situation not to have anything at all as a uniform practice? Perhaps looking at just the facts of this case, it might seem that way. And this case is brought by the association because on balance the association has concluded that the Riverside Sheriff's Department has been deliberately refraining from putting those kinds of reasons for termination for the purpose of avoiding hearing. I understand that that's the case. Because if they put bad reasons that are stigmatizing, they're necessarily public, and then you get your hearing automatically. So what you're arguing for is that for a personnel file that only says nice things about the termination. Well, in this case, as I said, presents only a few of the facts that can occur in this scenario. In balancing the interests, the important point that's raised by this case is that if the department is able to prevail on the arguments that they won summary judgment in the district court, they can always avoid a liberty interest hearing by simply not putting the charges in the personnel file. What class of cases are you asking for injunctive relief? I mean, I'm leaving aside the fact that you don't seem to have a lot of examples, but are you asking for injunctive relief in any instance in which there's a probationary discharge and you want a reason to put on the record, or is the fact that there was a coincident criminal charge the key issue here? I think the best way to understand that would be that it certainly, a probationary discharge for either no reasons, neutral reasons, or incompetence or inability would not give rise to a liberty interest hearing. Now, that raises the question that in any discharge where the county says, where the employer says there is no reason and the employee disputes that and says, I believe there is a reason, if it is a stigmatizing reason, the injunction should require the department to offer the liberty interest hearing. There's no common ---- But that's a completely different and way harder problem than this case, which was already hard to begin with. I mean, here you have a situation where your strongest argument, and there's, you know, it's a sensible, and whether it's meritorious or not argument, is that given the coincidence of these two events, there's a clear reference to be drawn from public records about why he was fired. But if there is no such thing, then what's your ground? I don't think there's any harm in allowing the employee to say, I believe that there's a stigmatizing reason, here is what it is, these are the facts that are alleged against me, and this is my defense to that. What you're saying, if I understand you right, is if he knows that his boss thinks he's a bad guy, but there is no stigmatizing reason put in the file of any kind whatsoever at any time, he's still entitled to a hearing to show that he's not the bad guy his boss thinks. I understand your argument, right? Well, I think there does have to be some public disclosure. All the cases say that, you know, if it was purely something made up from the private, it would be, purely from a private conversation, he would not be entitled to it. So if there's no conversation, why is that worse than a private conversation? Well, what the employee would be required to do in such a liberty interest hearing is to point to a public record or point to something that would go to a prospective employer, and if the employee can do that, I think that there's no reason why an inference the inference doesn't have to be drawn, but the employee should be entitled to the hearing. I don't understand why he's any more entitled to not face the stigma of having a criminal charge against him that was dismissed at the preliminary hearing than anyone else in the world is entitled to be free of the stigma of having a criminal charge against him that was dismissed at a preliminary hearing. Well, liberty Why is terminated favorably? You can't get an expungement when you're the charge against you is dismissed or you're acquitted. Nothing to expunge. Well, liberty is liberty interest of an employee is in a way it's analogous to the liberty interest of a citizen in being free from prison. I mean, this is the analogy that I just drew was to an ordinary citizen. But the average, the right of an employee, an employee has had his liberty curtailed when the employee has a profession, has prepared themselves to work in that profession and finds themself facing a charge that will bar them from the profession. A cop charges me with shoplifting and I get it washed out at the earliest stage. Tough luck for me. It stays on my record. But if I charge the cop with stealing from the evidence locker, and it gets washed out in an early stage, he's somehow entitled to a clean record. If he gets fired at the same time, and if he does get fired at the same time and he has this charge that will impair his liberty to find another position in the profession, that is something that I think is covered by the body of case law that grants liberty interest hearings. Is there any case that's analogous? I think the case that's analogous to this present case, probably the McMath case that we've cited, and the Vennelli case is quite factually analogous, as well as Brady. Those are the three that I think that we would pin our argument on. Our arguments on as standing for the proposition that it isn't what the employer puts in the personnel file can't be dispositive of the right to a liberty interest. Vennelli was just really different. It's not an at-will employee, for one thing. The Vennelli case, and I would request very, very seriously that the Court, if not convinced that Vennelli is a holding about property interest. This guy is a tenured schoolteacher fired in the middle of the year. Correct. But the Court had to reach the issue whether he was – whether his liberty interest was impaired, because it did find that the property interest was adequately served by his grant of a post-termination hearing at which the facts charged were sustained and his termination was found proper. The Court then had to remand the case for a consideration of whether damages are appropriate for the period of time in which his liberty interest was deprived. Okay. We're way over time. Unless one of us has more questions, I think we're done. Well, I will submit on that. Thank you, Your Honor. Thank you for considering our arguments. Good morning. It's Chris Lockwood for the County and the Sheriff. The Court made most of the points that I was going to make this morning, so just a few very brief comments before the Court has questions. Could you speak up? My ear is plugged up from flying and stuff. And I've got a bad cold, and it's been that way. Just a few brief comments. There was a question about whether the situation of the person after the hearing in which the charges are acquitted, California law actually goes farther than that and allows an application to the criminal court for a formal finding of factional It's a different question, but I'm asking in general under the Roth line of liberty interest hearing, what happens? If the person succeeds in a liberty interest hearing, what do they get? All they get is a statement from their employer clearing their name. They are not entitled to the job back. I did brief that. There's a statement in a footnote in Roth that says, of course, the employer can still fire them for other reasons, suggesting they can't or can still refuse to hire them for other reasons, suggesting you couldn't continue to refuse to fire them for that reason. There are actually a long line of cases holding there's no obligation to hire them back. I did brief that. Let me give you a case on that, actually, because I did cite that. It's not in the briefs, but I think it was in the trial. I know I addressed that issue. I was looking for it before you raised that point. Well, I'll come back to it. I do have a cite for that one. Codd v. Velker, I believe, is the case on that one. I know I cited it, and I went through everything yesterday. It's someplace in the record, because I read it yesterday, going through it. I just can't recall exactly. Here it is. That's the case. It's 429 U.S. 624. It's among one of the cases. There's other cases. I know I cited it someplace in here as well. But there's no other. The strongest argument from the other side, I suppose, is this. You essentially, the employer essentially can't divide and conquer. That if the circumstances are such that there is a firing and a publication on the same day, although not in the same personnel file, and anybody looking into the situation would infer that this was the reason for the firing, would find the reason and infer that this was why he was fired, that that gives rise to a liberty interest hearing. Why not? A few answers. And I think I need to go step by step as to why that doesn't give rise to one. Probably the simplest answer is it had a right to a hearing. So the issue was moved in the first place. He was offered one. He was offered a hearing? When was that? At the time of the termination. He was offered a chance to talk to the investigator and get his side. He did prepare his own report. That's in the record. He did prepare what, I'm sorry? A report about what happened. So he gave his side in writing. He was also given an opportunity to give his side orally. And he refused to do so. So he had the right to a hearing. Beyond that, as I was making earlier, under California law, following the dismissal of the charges, California law authorizes an application to the criminal court for a finding of factual innocence. That's Penal Code Section 851.8c. That could have been done either at the time of the hearing in the criminal court or any time. He can do it today if he wants to. So that right does exist. If he wants to, he has the right to do so. Is there any case law about the timing of the liberty hearing, whether it has to be before the firing or not? Cases go both ways on that one. And that's actually one of the issues brought up in the Vannelli case. In Vannelli, the court held that you have to give a pre-deprivation hearing anyway because he has a property right, and said when you have to do it anyway, then you should also hold the liberty interest at the same time. Generally, though, one after the fact is sufficient. He had a property right, though. Vannelli had a one-year contract. Correct. And that's why the court in that case said it has to be a pre-termination. But generally, a post-termination is sufficient. What is the sheriff's department's general practice when they have an excessive force situation? Do they generally refer the officers to the DA for prosecution? I frankly don't have an answer to that question. This is the only time I've ever run across a situation. And we've got a good department generally. It doesn't happen that much. Well, it's actually, I mean, you know, my biggest problem with the role that's being proposed here is that it would discourage the sheriff's department and other sheriff's departments, which already have an incentive not to do it anyway, further from reporting bad eggs to the DA. I mean, we obviously have had that problem in the past in L.A. And so you don't want to put incentives on the department not to report people who are beating up shackled prisoners. You're suggesting cops don't have immunity from criminal prosecution? Yes. I'm suggesting that. One comment on that. Most of the time, the sheriffs are involved, have gotten past probation. They have a property right at that point. And so they do have a right to a hearing. So this is only the small category of deputies who are still on probation. Just to test your, to go back to this coincidence of timing questions. Suppose the sheriff's department had fired this guy in the same way, not put anything in his personnel file. Had not referred him to the DA, but instead had called the local newspaper and said, you know, this guy beat up so-and-so. Didn't say there was a reason for firing him, but just you might want to know that this sheriff beat up this prisoner. We're having problems in the jail, and here's an example. And it showed up in the newspaper. What about that? At that point, there would be a public disclosure of stigmatizing grounds at the same time as the firing in the federal law. We don't have a public disclosure of stigmatizing grounds at the same time as the firing. So unless we're going to insulate the criminal referral for reasons such as Judge Worthlaw suggests, it seems like it's exactly the same thing. I don't think it is. And part of it is if the, there's a multiple step in the process. If you do the newspaper, you've called them up, you have just publicized it. If you refer criminal charges, those are not public. And if the DA decides not to prosecute, it never becomes public. There is the additional step in the process, then, that the district attorney has to make a decision to prosecute. And it comes back to the question that was asked earlier, is there a right? Kagan. Newspaper editor has to decide to publish in the newspaper, so I don't think that's the difference. Well, I think it is, actually, because it's the disclosure to the newspaper itself is publicizing. The disclosure to the district attorney is not. It's a civil internal at that point. Because that is not somebody who's the public in general. What the newspaper is, and that's what the cases all require, is a disclosure to the public. A disclosure by law enforcement to the district attorney is not a public disclosure. As long as it's within the government, it's okay? If they told the FBI, that would be okay, too? As long as it's kept as a confidential investigation, yes. I would think a lot of communications to prosecutors to launch a criminal prosecution would be secret, actually, so that the person wouldn't run away. True. And there's no evidence that anybody ever would have heard about this if the D.A. had not decided to file charges. So I think that's the distinction that's important to make there. There was a brief discussion with opposing counsel about the request for an injunction. I'm not sure the Court wants it or not, but I'll offer it and you can decide with it. The other example they gave besides Mr. Brastreet is Xavier Mandrigal. And at the time the briefs were filed, the case had been tried, it had been a decision, but there had not yet been a judgment. There is a judgment now, if the Court wants it, I have it. I don't care or not. Basically, what the Court said is that the Federal cause of action was barred by the statute of limitations, so there's no requirement to reach any issues at all. The Court did order a very limited hearing under California law concerning the initial acquisition of documents at the time of the initial hire of Mr. Mandrigal, which had nothing to do with this case at all. So that's an offer to show that it is not evidence to support the request for injunction if the Court wants it. Aside from that, I'll submit. Thank you. Thank you, counsel. Riverside Sheriff's Association v. County Riverside is submitted to adjourn until 9.30 tomorrow morning.
judges: Kleinfeld, Wardlaw,berzon